# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Francisca A.B.,                      Civ. No. 18-2854 (BRT)

    Plaintiff,

v.                                            **MEMORANDUM**
                                               **OPINION AND ORDER**

Andrew Saul,
Commissioner of
Social Security,

    Defendant.

Edward C. Olson, Esq., Attorney at Law, and Edward A. Wicklund, Esq., Olinsky Law Group, counsel for Plaintiff.

James D. Sides, Esq., Social Security Administration, counsel for Defendant.

BECKY R. THORSON, United States Magistrate Judge.

      Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income disability benefits. This matter is before the Court on the parties' cross–motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 16, 21.) For the reasons stated below, the Court concludes that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence in the record. Therefore, Plaintiff's motion is denied and Defendant's motion is granted.

**I.      Background**

Plaintiff applied for supplemental security income disability benefits pursuant to Title XVI of the Social Security Act. She alleges a disability onset date of April 9, 2015. (Tr. 19.)[1] In a decision dated November 20, 2017, the ALJ proceeded through the five-step sequential evaluation process[2] and found that Plaintiff was not disabled since the claimed onset date of disability. (Tr. 21–33.) At step one, the ALJ determined that Plaintiff has not been gainfully employed since the alleged onset of disability. (Tr. 21.) At step two, the ALJ concluded that Plaintiff had the following medically determinable and severe impairments: degenerative disc disease of the lumbar spine; type-2 diabetes mellitus; mild persistent asthma; major depressive disorder; generalized anxiety disorder; posttraumatic stress disorder; and intellectual disorder. (*Id.*) At step three, the ALJ concluded that, while severe, none of the Plaintiff's impairments, or combination of impairments, qualified under a listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 22.) None of these findings are challenged on appeal.

---

[1]      Throughout this Opinion and Order, the abbreviation "Tr." is used to reference the Administrative Record. (Doc. No. 11.)

[2]      At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. Step two requires the ALJ to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." At step three, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listed impairment. Before step four, the ALJ determines the claimant's residual functional capacity ("RFC"). At step four, the ALJ determines whether the claimant has the RFC to perform the requirements of her past work. And at step five, the ALJ determines whether the claimant can do any other work considering her RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)–(f).

Before continuing to step four, the ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform "light" work with the following limitations:

> lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently; sitting for six hours and standing/walking for six hours in an eight-hour workday; no climbing ladders, ropes, or scaffolds; only occasional climbing of ramps or stairs; only occasional balancing, stooping, kneeling, crouching, and crawling; no work at unprotected heights or around moving mechanical parts; avoid concentrated exposure to wetness, extreme cold, and extreme heat; limited to performance of simple, routine tasks; only occasional, brief, and superficial contact with coworkers, supervisors, and the public, defined as no lower than an "8" in terms of the fifth digit of the Dictionary of Occupational Titles code. (Tr. 25–26.)

At step four, the ALJ concluded that Plaintiff could not perform any past relevant work. (Tr. 31.) At step five, after considering all relevant factors, the ALJ concluded that Plaintiff had the ability to perform jobs that exist in significant numbers in the national economy. These jobs included assembly, and sub-assembly, of small products and electrical accessories. (Tr. 32.)

## II. Standard of Review

The Commissioner's decision will be upheld if the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). This standard "allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v.*

*Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations omitted). If it is possible to draw multiple, inconsistent conclusions from the record, and one of those conclusions represents the ALJ's findings, the decision must be affirmed. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (stating that the court must affirm even if it would have weighed the evidence differently).

## III. Analysis

Plaintiff challenges the findings of the Commissioner on five grounds and requests remand. Plaintiff argues that: (1) the ALJ was unconstitutionally appointed, (2) the ALJ inappropriately weighed the opinion of Dr. Gustafson, (3) the ALJ failed to consider the opinion of Dr. Karayusuf, (4) the ALJ's failure to appropriately weigh medical opinions led to incomplete vocational expert hypothetical questioning, and (5) the ALJ failed to adequately develop the administrative record. Each argument will be addressed respectively.

### 1. Appointments Clause

The United States Constitution vests the president with the power to nominate all officers of the United States. U.S. Const. art. II, § 2, cl. 2. However, "Congress may by law vest the appointment of such inferior officers, as they think proper, in the president alone, in the courts of law, or in the heads of departments." *Id*. An "inferior officer" is one who holds a "continuing and permanent" position and exercises "significant authority pursuant to the laws of the United States." *Lucia v. S.E.C.*, 138 S.Ct. 2044, 2051 (2018) (citations omitted).

Plaintiff argues that her social security disability petition was adjudicated by an improper and unconstitutionally appointed ALJ (i.e., inferior officer) and therefore this case should be remanded for a new hearing with a different and constitutionally appointed ALJ. Plaintiff concedes that she did not raise this argument at any time during the administrative review process. Defendant does not contend that SSA ALJs are employees rather than inferior officers, and acknowledges that on July 16, 2018—after the ALJ issued his decision in Plaintiff's case (dated November 20, 2017), but before the Appeals Council denied review of the ALJ's decision on August 2, 2018—the Commissioner ratified the appointment of SSA ALJs and Appeals Council administrative appeals judges and approved their appointments as her own in order to address any Appointments Clause questions involving SSA claims. *See* 84 Fed. Reg. 9582-02 (Mar. 15, 2019) (citing Social Security Emergency Message (EM) 18003 REV 2, § B (available at https://secure.ssa.gov/apps10/reference.nsf/links/08062018021025PM)). However, the Defendant does argue that Plaintiff forfeited any Appointments Clause claim by failing to raise it at the administrative level. Under the circumstances of this case and the status of Supreme Court and Eighth Circuit caselaw, the Court agrees with the Defendant and finds that Plaintiff's Appointments Clause argument has been forfeited and no exceptional circumstances apply which would allow Plaintiff's argument to be presented to this Court in the first instance.

The Supreme Court has spoken about the authority of some "inferior officers" and separately as to the exhaustion requirements in social security appeal cases, but has not spoken as to whether a plaintiff must exhaust an argument challenging the authority of an

5

SSA ALJ before appealing the final administrative decision in a social security disability case to federal district court. For example, on June 21, 2018,[3] the Supreme Court in *Lucia v. S.E.C.*, held that Securities and Exchange Commission ("SEC") ALJ's are inferior officers who are subject to the Appointments Clause and that a party objecting to such an ALJ's authority must raise a "timely challenge." *Id*. at 2051, 2055. The Court stated that the "'appropriate' remedy for [a claim] tainted with an appointments violation is a new 'hearing before a properly appointed official.'" *Id*. at 2055. There, the Supreme Court found the petitioner's challenge timely. Although the petitioner in *Lucia* did not raise the issue to the ALJ, he did—after the ALJ issued an unfavorable decision—raise the issue at the administrative level to the SEC, to which issue exhaustion is statutorily required to obtain judicial review. *See* 15 U.S.C. § 77i.

Therefore, although *Lucia* provides general guidance that party objecting an ALJ's authority must raise a "timely challenge," that case involved SEC review procedures, not SSA review procedures, and therefore the decision did not speak to what constitutes a timely objection in a Social Security proceeding. However, that case instructs that an objection must be made at some point during the administrative process for the challenge to be timely. Here, it is undisputed that Plaintiff neither raised the issue of the ALJ's authority to the ALJ nor to the Appeals Council.

Plaintiff argues that she was not able to present the argument about the ALJ's authority at the administrative level because *Lucia* was not decided until June 21, 2018.

---

[3] This decision was issued while Plaintiff's request for review with the Appeals Council was pending.

Plaintiff's request for review of the ALJ's decision was filed with the agency on January 4, 2018 – over six months prior to the *Lucia* decision. (Tr. 277.) And her request for review was denied on August 2, 2018 (Tr. 1), one month after the *Lucia* decision issued, which, argues Plaintiff, allowed for no time for Plaintiff to submit evidence and arguments to the Appeals Council. Plaintiff therefore argues that the first opportunity she had to challenge the appointment of the ALJ was in her appeal made to this Court. This Court disagrees. Plaintiff's ability to raise an Appointments Clause challenge was not hinged on the outcome of the *Lucia* decision. As explained above, the inferior officers and the agencies they worked for differ between this case and that in *Lucia*, as do the statutory exhaustion requirements for those agencies. And, the Appointments Clause, nestled in Article II of the United States Constitution (ratified in 1788), was in existence well before Plaintiff presented her arguments to the ALJ and Appeals Council. Plaintiff was represented by counsel in her proceedings before the ALJ, and that counsel was in no way precluded from making an Appointment Clause challenge.[4] Further, at the time that Plaintiff's counsel could have raised the issue to the ALJ or to the Appeals Council, counsel would have had access to the arguments made by counsel in *Lucia* to—at a minimum—the underlying courts.

  Plaintiff also argues that failure to raise the Appointments Clause challenge at the administrative level is not fatal to her raising it on appeal because there is not an issue

---

[4]  *See, e.g.*, *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) ("[A]t least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal.").

exhaustion requirement in social security cases. Plaintiff cites to *Sims v. Apfel*, 530 U.S. 103 (2000), for support.[5] However, in *Sims*, the Supreme Court stated that claimants need not "exhaust issues in a request for review *by the Appeals Council* in order to preserve judicial review of those issues." *Id.* at 111 (plurality opinion) (emphasis added). The Court explicitly noted that "[w]hether a claimant must exhaust issues before the ALJ is not before us." *Id.* at 106. After *Sims*, the Eighth Circuit held that the failure to raise a claim in some fashion during the administrative process in a social security disability case forfeits the claim for purposes of federal court review.[6] *See Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) (holding that claimant's failure to raise disability claim based on obesity "waived [the claim] from being raised on appeal"). The Eighth Circuit is yet to rule specifically on whether an Appointments Clause challenge must be exhausted at the administrative level in social security cases.

In other types of cases, however, the Eighth Circuit has stated that it considers Appointments Clause challenges to be "non-jurisdictional," and have found them waived

---

[5] Plaintiff also refers to a few other district court decisions by courts outside the Eighth Circuit that rely on *Sims*.

[6] The First Circuit has made a similar finding, which this Court finds persuasive. There, the court stated:

> [W]e have no intention of extending [the *Sims*] rule, if it is one (only four members of the Court endorsed it), to the failure of an applicant to raise an issue at the ALJ level. *Cf. Sims*, 120 S.Ct. at 2089 (Breyer, J., dissenting). The impact of a no-waiver approach at the Appeals Council level is relatively mild; at the ALJ level it could cause havoc, severely undermining the administrative process.

*Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir. 2001).

if it is not raised at the administrative level and have found no "extraordinary circumstances"[7] to allow the court to exercise its discretion to hear the challenge. *See N.L.R.B. v. RELCO Locomotives, Inc.*, 734 F.3d 764, 795, 798 (8th Cir. 2013) (stating that "the [Supreme] Court has been quite consistent in holding that the invalidity of an agency official's appointment is not a jurisdictional defect"); *see also*, *e.g.*, *Freytag v. Commissioner*, 501 U.S. 868, 878 (1991) (characterizing Appointments Clause challenges as nonjurisdictional). While the Supreme Court has on "rare" occasion "exercised its discretion to consider nonjurisdictional claims that had not been raised below," *Freytag*, 501 U.S. at 878–79 (citing cases), the Supreme Court has not defined what are "rare" cases and when a court should exercise its discretion.[8] The Eighth Circuit

---

[7]  "The NLRA contains its own jurisdictional bar . . . foreclosing judicial consideration of any argument not presented before the Board unless 'extraordinary circumstances' are present." *N.L.R.B. v. RELCO Locomotives, Inc.,* 734 F.3d 764, 795 (8th Cir. 2013) (citing 29 U.S.C. § 160(e), and *St. John's Mercy Health Sys. v. NLRB,* 436 F.3d 843, 848 (8th Cir. 2006)).

[8]  The Supreme Court in *Freytag* exercised its discretion to review an Appointments Clause challenge that had not been raised before the Tax Court. However, in Justice Scalia's concurring opinion in *Freytag*, he expressed his frustration with the Court not providing more clarity on what would be considered a "rare" case:

> Petitioners would have us answer that question "no" by adopting a general rule that "structural" constitutional rights as a class simply *cannot* be forfeited, and that litigants are entitled to raise them at any stage of litigation. The Court neither accepts nor rejects that proposal—and indeed, does not even mention it, though the opinion does dwell upon the structural nature of the present constitutional claim, *ante*, at 2638–2640. Nor does the Court in any other fashion answer the question we specifically asked to be briefed, choosing instead to say that, in the present case, it will "exercise our discretion" to entertain petitioners' constitutional claim. *Ante*, at 2639. Thus, when there occurs a similar forfeiture of an Appointments Clause objection—or of some other allegedly structural constitutional deficiency—

9

agrees that *Freytag* "indicates that a reviewing court generally is permitted (though not obliged) to hear a belated appointments clause challenge," and in 2013 had only found two situations in the N.L.R.A. context that qualified as "extraordinary circumstances" where they allowed an appointments clause challenge to proceed notwithstanding the exhaustion requirement.[9] *RELCO*, 734 F.3d at 796 (declining to find "extraordinary circumstances").

---

    the courts of appeals will remain without guidance as to whether the forfeiture must, or even may, be disregarded. (The Court refers to this case as "one of th[e] rare" ones in which forfeiture will be ignored, *ibid.*—but since all forfeitures of Appointments Clause rights, and arguably even all forfeitures of structural constitutional rights, can be considered "rare," this is hardly useful guidance.) Having asked for this point to be briefed and argued, and having expended our time in considering it, we should provide an answer. In my view the answer is that Appointments Clause claims, and other structural constitutional claims, have no special entitlement to review. A party forfeits the right to advance on appeal a nonjurisdictional claim, structural or otherwise, that he fails to raise at trial. Although I have no quarrel with the proposition that appellate courts may, in truly exceptional circumstances, exercise discretion to hear forfeited claims, I see no basis for the assertion that the structural nature of a constitutional claim in and of itself constitutes such a circumstance; nor do I see any other exceptional circumstance in the present case.

*Freytag*, 501 U.S. 868, 893–94.

[9]     The two situations were in *NLRB v. International Brotherhood of Teamsters*, 225 F.2d 343, 346 (8th Cir. 1955), where the Eighth Circuit indicated that one extraordinary circumstance would be if the Board's decision were "nakedly void under the statute," and the other "extraordinary circumstance" is when "a new development of fact or law occurs after the Board's decision or was otherwise unavailable to the party at the original hearing." *RELCO*, 734 F.3d 764, 796 (8th Cir. 2013) (citing *Monark Boat Co. v. NLRB*, 708 F.2d 1322, 1325 (8th Cir. 1983)). Neither such extraordinary circumstance exists in this case.

10

Here, nothing about this social security case indicates that the Court should designate this case as a "rare" case. All the facts and legal arguments necessary to make an Appointments Clause challenge were available to Plaintiff and her counsel when her case was heard by the SSA ALJ, and there was nothing foreclosing Plaintiff from making the argument. Because Supreme Court precedent requires a "timely challenge"—and this is not a rare case that justifies discretionary review—the Court concludes that Plaintiff's failure to assert a challenge to the ALJ's appointment before the SSA at any point in the administrative proceedings constitutes waiver of the issue and the Court will not address it on appeal.[10]

---

[10] The vast majority of district courts that have decided this issue have rejected attacks on the validity of an SSA ALJ's appointment where the claimant failed to make the constitutional challenge at the administrative level. (*See* Doc. No. 22, Def.'s Mem. 23–24, n.7 (citing cases).) Other decisions from this District have found waiver of the issue as well. *See*, *e.g.*, *Long M. v. Berryhill*, No. 18-cv-862, 2019 WL 2163384, at *8 (D. Minn. May 17, 2019) ("[G]iven that Plaintiff failed to raise the Appointments Clause challenge at any point during the administrative process, he has waived this claim."); *Kimberly B. v. Berryhill*, No. 17-cv-5211, 2019 WL 652418, at *15 (D. Minn. Feb. 15, 2019) ("Plaintiff did not raise her Appointments Clause argument to the Social Security Administration; thus, it is waived"); *Audrey M.H. v. Berryhill*, No. 17-cv-4975, 2019 WL 635584, at *12 (D. Minn. Feb. 14, 2019) ("[G]iven that Plaintiff failed to raise the Appointments Clause challenge at any point during the administrative process, she has waived this claim"); *Catherine V. v. Berryhill*, No. 17-cv-3257, 2019 WL 568349, at *2 (D. Minn. Feb. 12, 2019) ("Plaintiff did not raise her Appointments Clause challenge in the administrative proceedings and, therefore, did not preserve it for judicial review.").

### 2. Dr. Gustafson's Opinion

Plaintiff argues that the ALJ erred when he gave "little" weight to the medical opinion of Plaintiff's treating physician, Dr. Gustafson. (Pl.'s Mem. 11.) In April 2015, Dr. Gustafson completed a disability form. (Tr. 572–73.) On this form, Dr. Gustafson opined that Plaintiff would be unable to walk at least one city block, to stand or sit for more than one hour, and miss at least four days of work per month. (*Id.*) The form did not provide an explanation or objective evidence to support the severity of these findings.

An ALJ should give a treating physician's opinion significant weight if it is "well-supported by medically acceptable . . . techniques and is not inconsistent with other substantial evidence." *House v. Astrue*, 500 F.3d 741, 744 (8th Cir. 2007). Even if the treating physician's opinion meets this criteria, it is not entitled controlling weight if it is based on subjective complaints instead of objective evidence. *Gieseke v. Colvin*, 770 F.3d 1186, 1188–89 (8th Cir. 2014). Here, the ALJ determined that Dr. Gustafson's opinion was unsupported by objective medical evidence and overly reliant on Plaintiff's subjective complaints. This Court agrees.

First, the record medical evidence supports the ALJ's decision. Dr. Gustafson's reports state that MRI's, EMG/NCV's, and other medical tests did not discover any irregular findings. (Tr. 413.) Therefore, Dr. Gustafson's reports and objective medical tests are inconsistent with his April 2015 opinion regarding Plaintiff's limitations. In addition, Plaintiff received lumbar fusion surgery after Dr. Gustafson provided his opinion. This procedure relieved Plaintiff's impairment symptoms such as "antalgic gait" and "focal deficits." (Tr. 652.) Because there is substantial medical evidence that

indicates an improvement in Plaintiff's impairment after Dr. Gustafson filed his medical opinion, and because Dr. Gustafson's own reports conflict with his option, the ALJ did not err by giving Dr. Gustafson's opinion less weight.

Further, "an ALJ need not give a treating physician's opinion controlling weight when the opinion is based on a claimant's subjective complaints that ALJ does not find credible." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). When evaluating the claimant's subjective complaints, the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). One of the *Polaski* factors is the claimant's daily activities. Here, Plaintiff's reported daily activities were inconsistent with the severe limitations suggested by Dr. Gustafson. For example, Plaintiff engages in activities such as driving, walking for at least three city blocks, shopping in stores, babysitting, and completing household chores. (Tr. 367–71.) These daily activities are inconsistent with the severe limitations provided by Dr. Gustafson. Because the ALJ had good reason to conclude that Plaintiff's reports regarding her limitations were not credible, he could discount Dr. Gustafson's opinion to the extent that it relied on Plaintiff's subjective complaints. *See Vance*, 860 F.3d at 1121; *see also Schwandt v. Berryhill*, 926 F.3d 1004, 1011 (8th Cir. 2019) ("The results of a claimant's medical examinations and the claimant's reported daily activities can undermine a treating physician's opinion.").

If an ALJ's decision is supported by substantial evidence, it must be affirmed regardless of whether other evidence could support an alternative conclusion. *Perkins*, 648 F.3d at 897. Here, the ALJ's decision to give "little" weight to Dr. Gustafson's opinion is supported by substantial evidence and must be affirmed.

### 3. Dr. Karayusuf's Opinion

Dr. Karayusuf conducted a mental examination of the Plaintiff on October 18, 2014. The findings of that examination included a diagnosis of PTSD, major depression, alcohol abuse, marijuana abuse, somatoform disorder and personality disorder. (Tr. 491.) Dr. Karayusuf opined that these disorders would limit Plaintiff to "simple instructions" and an "[inability] to interact effectively with fellow workers, supervisors and the public." (*Id.*) The ALJ gave "no weight" to the opinion of Dr. Karayusuf for two reasons: the opinion is outside the relevant timeframe, and the record does not support the severity of the diagnosis. Plaintiff argues that the ALJ erred when he gave "no weight" to Dr. Karayusuf's opinion and when he considered his own observations of the Plaintiff during the hearing. (Pl.'s Mem. 14–17.)

While evidence from outside the relevant timeframe may be helpful in elucidating an impairment, it cannot serve as the only support for the disability claim. *Pyland v. Apfel*, 149 F.3d 873, 878 (8th Cir. 1998). While the ALJ was not required to consider Dr. Karayusuf's 2014 opinion, he adopted the relevant conclusions into his RFC determination. Specifically, the ALJ noted that the Plaintiff is limited to "simple, routine tasks" and "brief, and superficial contact with coworkers, supervisors and the public." (Tr. 26.) Therefore, while Dr. Karayusuf was given "no weight," his relevant conclusions

were adopted by the ALJ, and therefore Plaintiff's argument relating to Dr. Karayusuf's opinions is a moot point.

Plaintiff also contends that the ALJ committed reversible error when he referenced his own personal observations of the Plaintiff during the hearing. (Pl.'s Mem. 6.) "While the ALJ's observations cannot be the sole basis of his decision, it is not an error to include [it] as one factor." *See Lamp v. Astrue*, 531 F.3d 629, 632 (8th Cir. 2008) (holding that an ALJ can consider his own observations of the claimant as long as it is not the sole basis of his determination). In this case, the ALJ did not solely rely on his own personal observations. The ALJ specifically relied on records from the relevant timeframe that indicated Plaintiff's methods of coping with depression, renewed responsibilities of taking care of her grandchildren, and a desire to find new employment.[11] (Tr. 730–38.)

In sum, because Dr. Karayusuf's examination was conducted outside the relevant timeframe, the ALJ did not err in giving it "no weight," and did not err in considering his own observations. Moreover, even if the designation of weight to be given to Dr. Karayusuf's opinion was not supported, that error would be harmless because the ALJ in fact incorporated the relevant limitations provided by Dr. Karayusuf in the RFC finding.

---

[11] A plaintiff's job search after the alleged onset date of disability "undermines [their] claim that [they are] unable to work." *Melton v. Apfel*, 181 F.3d 939, 942 (8th Cir. 1999).

15

### 4. Vocational Expert Hypothetical

Plaintiff claims that the ALJ's step-five determination was not supported by substantial evidence in the record because the ALJ's hypothetical to the Vocational Expert ("VE") was incomplete. Plaintiff bases this argument on her claim that the ALJ's RFC determination was incomplete because he inappropriately weighed the opinions of Dr. Gustafson and Dr. Karayusuf, as stated above. (Pl.'s Mem. 10, 14.)

"The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). Because this Court concludes that the ALJ's findings are supported by substantial evidence, the hypothetical question was proper, and the VE's answer constituted substantial evidence supporting the ALJ's denial of benefits. *Id.*

### 5. Development of the Administrative Record

Finally, Plaintiff argues that the ALJ erred in his duty to adequately develop the administrative record when he failed to obtain medical records concerning post-surgical physical impairments. (Pl.'s Mem. 9–10.) This argument relates to potential physical limitations relating to Plaintiff's back. Dr. Gustafson, Plaintiff's treating physician, examined Plaintiff on January 23, 2015, and concluded that she should pursue a surgical procedure for nerve root issues in her back. (Tr. 527.) When Plaintiff followed up with

Dr. Gustafson on May 12, 2015, she had not yet received surgical intervention.[12]
(Tr. 578.) On October 30, 2016, Plaintiff was examined by her family physician, Dr. Torralba. At this appointment, Plaintiff reported receiving back surgery. (Tr. 646.) Therefore, the record reflects that Plaintiff had back surgery sometime between May 2015 and October 2016.

Plaintiff did not provide records of her back surgery or post-surgery medical records to the ALJ either before or after the October 12, 2017 hearing. A claimant bears the burden of producing all relevant evidence of their physical impairments in proceedings before the Social Security Administration ("SSA"). *See* 20 C.F.R. § 416.1435(a). In May 2017, the Commissioner enacted an amendment to this regulation. The amended regulation states that the claimant must produce all relevant evidence at least five business days prior to the hearing. *Id*. Absent a recognized exception or special circumstance, the ALJ does not need to consider any evidence that does not comply with this requirement. *Id*. § 416.1435(b).At the hearing, Plaintiff's attorney acknowledged that Plaintiff was aware of the requirement and stated that no special circumstances existed to warrant non-compliance. (Tr. 47.)

Plaintiff now alleges that, despite her failure to comply with the five-day requirement, the ALJ had an affirmative duty to further develop the record in order to make an informed decision. (Pl.'s Mem. 12.) Plaintiff argues that the ALJ should have

---

[12] Approval for surgery was pending at the time of this medical visit. (Tr. 578.)

ordered a consultative examination of her post-surgery physical condition, and in not doing so, the ALJ's decision constituted reversible error.

If there is substantial medical evidence in the record to support the ALJ's decision, he is not required to order a consultative examination. *See* 20 C.F.R. § 416.920b(b)(2)(iii). Here, there is post-surgical medical evidence that indicates an improvement in Plaintiff's physical impairments. Dr. Torralba examined Plaintiff twice in December 2017. At both appointments, she noted that Plaintiff had a "normal gait" and "no focal deficits." (Tr. 652.) These observations indicate an improvement in Plaintiff's physical ability since her surgery. "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brown v. Barnhart,* 390 F.3d 535, 540 (8th Cir.2004) (internal quotations omitted).

Therefore, because Plaintiff did not provide the purported additional relevant evidence prior to the hearing, and because there is substantial evidence in the record supporting the ALJ's decision—including medical evidence showing an improvement in her condition—the ALJ's decision must be affirmed.

## ORDER

Based on the foregoing, and all the files, records, and submissions herein,

**IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 14) is **DENIED**; and

2. Defendant's Motion for Summary Judgment (Doc. No. 19) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: March 24, 2020.　　　　　　　　　　*s/ Becky R. Thorson*　　　　　
　　　　　　　　　　　　　　　　　　　　BECKY R. THORSON
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge